IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:06-CR-127 |
| | ) | |
| ROBERT ANDERSON | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Suppress Evidence Seized Illegally and Motion to Suppress Statements, filed by Robert Anderson on September 18, 2006; and the request for hearing pursuant to *Franks v. Delaware* contained in Anderson's brief filed on March 8, 2007.  For the reasons set forth below, the Motion to Suppress Statements is **DENIED,** and the Motion to Suppress Evidence Seized Illegally is **DENIED** to the extent it seeks to suppress evidence contained on the computer seized from Chaos Computers, and **REMAINS UNDER ADVISEMENT** to the extent it seeks to exclude evidence seized from Anderson's Home.  Anderson's request for a hearing pursuant to *Franks v. Delaware* is **GRANTED,** and the hearing is scheduled for Wednesday, April 18, 2007 at 9:00 a.m.

BACKGROUND

On August 2, 2006, Robert Anderson ("Anderson") was charged in

a three-count indictment with receiving child pornography, possessing child pornography, and possessing child pornography with the intent to sell it, in violation of 18 U.S.C. section 2252.

Thereafter, Anderson filed the instant motion to suppress. A hearing was held on January 4, 2007. The Court heard testimony from Timothy Heard ("Heard"), Christopher Friedlund ("Friedlund") and James Richardson ("Richardson"). The hearing was continued, and resumed on February 15, 2007, with additional testimony being heard from Philip Coduti ("Coduti"). At the close of the hearing, this Court took the instant motions under advisement, and ordered the parties to submit briefs outlining their positions. In Anderson's supplemental brief, Anderson raised a new legal issue, and requested a *Franks* hearing. This request prompted this Court to order additional briefing from the parties. This matter is now fully briefed and ripe for adjudication.

FINDINGS OF FACT

On July 7, 2006, Anderson brought his computer into Chaos Computers for repairs. (Transcript of Suppression Hearing, V.1: 70). Heard examined Anderson's computer and determined that the Windows operating system was "trashed" and the only solution was to "start it over." (*Id.* at V.1: 9, 11). Heard called Anderson and indicated to him that the Windows operating system was going to have to be wiped clean from the computer. (*Id.* at V.1: 12). Anderson did not want any of the drives overwritten. (*Id.* at V.1: 12-13). Heard discussed with Anderson the possibility of adding an additional hard drive so as to not delete any of the information already stored in the computer.

(*Id.* at V.1: 13). After discussing this option with Anderson, Anderson agreed and approved all of the work which Heard was going to do on the computer. (*Id.* at V.1: 13, 32).

As part of the repair procedure, in order to determine if Anderson's computer was completely repaired, Heard began clicking on various folders to see if they were accessible and working properly. (*Id.* at V.1: 37-42). This was necessary to determine if the newly installed Windows program was working properly. (*Id.* at V.1: 51-52). Observing mere thumbnail images in the file folders was not sufficient for Heard to determine if the Windows operating system was properly installed. (*Id.* at V.1: 54-55). While doing this inspection, Heard discovered numerous digital images of naked underage females in various poses. (*Id.* at V.1: 15-42). Heard estimated these girls to be under the age of 12. (*Id.* at V.1: 15). After reviewing the low-quality thumbnail images of the suspected child pornography, Heard clicked on some of the thumbnails and started opening up the folders. (*Id.* at V.1: 19, 42).

Upon viewing the images, Heard immediately talked with Friedlund, who was present at the store. (*Id.* at V.1: 16). In all of his years as a computer technician, Heard had never encountered any images like these before. (*Id.* at V.1: 16). Friedlund also viewed the images while talking to Heard. (*Id.* at V.1: 16, 43, 59-60). Friedlund testified that the images he viewed were of little children engaged in sexual activity with adults. (*Id.* at V.1: 60). The children ranged between 5 to 10 years old. (*Id.* at V.1: 60)). It is unclear from the record whether Friedlund viewed these images in their

thumbnail form, or their enlarged form.  (*See* V. 1: 93 and V. 1: 44).

Heard called Officer Richardson of the Lake Station Police Department and told Richardson what he had viewed.  (*Id.* at V.1: 16-17, 44).  Neither Heard nor Friedlund touched the computer again until Richardson arrived.  (*Id.* at V.1: 44).  After Richardson arrived at the shop, both Heard and Friedlund asked Richardson to look at the computer because they did not know what to do with these images of child pornography.  (*Id.* at V.1:61).  Friedlund initially showed Richardson what he had viewed on the computer.  (*Id.* at V.1: 61).  Friedlund believed that he probably had previously clicked on the images to make them larger at the time he viewed them with Heard, but Friedlund was unsure whether Heard had actually clicked on the images or not.  (*Id.* at V.1: 72).

After Friedlund showed Richardson the images that he had viewed of children engaging in sexual activity, Heard and/or Friedlund gave permission to Richardson to view the contents of the computer.  (*Id.* at V.1: 20, 61).  Richardson scrolled further down the computer screen and saw additional thumbnail pictures of naked children and children engaging in sexual activity.  (*Id*. at V.1: 61-62).

Richardson testified that upon arriving at Chaos Computers, Heard lead him to the computer he was working on, clicked on a folder and opened it up.  (*Id.* at V.1: 85).  Richardson, Heard, and Friedlund clicked further into the computer and found additional images of child pornography.  (*Id.* at V.1: 45).  At least some of these images were enlarged for Richardson to view.  (V.1: 72-73).  One of the images was so disturbing that Heard walked away from the computer.  (*Id.* at V.1:

45).  Friedlund and Richardson remained at the computer. *Id.* at V.1: 45).

Richardson then saw suggestive photos of juveniles approximately between the ages of 5-8 years old engaged in different sexual acts. (*Id.* at V.1: 85).  Richardson viewed approximately seventy-five thumbnail photos. (*Id.* at V.1: 92).  Richardson clicked on approximately three or four of the thumbnail images to enlarge them. (Id.).  Prior to enlarging them, the images were discernable as children engaged in child pornographic acts, but the exact ages of the children were unable to be determined.  (*Id.* at V.1: 93).  Richardson then ceased his examination and contacted additional law enforcement individuals.  (*Id.* at V.1: 94).

On July 13, 2006, Anderson came to Chaos Computers and retrieved the computer he had left there to be repaired.  (*Id.* at V.2: 111). He was approached by Immigration and Customs Enforcement Special Agent Philip Coduti ("Coduti"), who was at Chaos Computers.  (*Id.*).  Coduti asked Anderson if the computer he had just retrieved belonged to him. (*Id.*).  Anderson said that it did.  Coduti then asked Anderson to voluntarily accompany a Lake Station Police detective and Coduti to the Lake Station Police Department.  (*Id.* at V2: 111, 122).  Anderson agreed to go.  Upon arrival at the Lake Station Police Department, Anderson was advised of his rights, and made statements to the police thereafter.  (*See* Gov. Ex. 3A and 3B).  A warrant to search Anderson's computer, a black computer with serial number LP34000056, was obtained on July 14, 2006.  (*See* 2:06MJ148).  After Richardson viewed the images on the computer, no additional law enforcement officers viewed

-5-

the contents of the computer until this search warrant was obtained. (*Id.* at V.2, 112, 120-21).

During Coduti's interrogation of Anderson, Coduti stated "Any time in your entire statement, the one you gave to me verbally as well as the one that you gave me written, every time I find something that's inaccurate based on my forensic scientists coming back to me, that's an additional charge." (Gov. Ex. 3B at 17:38). Coduti also stated that "If you put in there that you have the Hamilton Collection, that you believe is called the Hamilton Collection, that you know photos like that, photos that are likely naked children but artistic not necessarily grotesque or them being hurt in any way .... please add that to this because then if I come across that then I'm not having to ... you understand what I'm saying Robert ... I need you to see what you have so I don't have to charge you with those additional charges." (Gov. Ex. 3B at 20:36). It was after this statement was made that Anderson admitted that he "believe[s] there are ... 'art' photos of naked adolescents or teens" on the computer seized from Chaos. (Gov. Ex. 3B at 22).

Also during the interview, Coduti asked Anderson whether there was anything in his house that may contain child pornography. (Gov. Ex. 3B at 29). Anderson stated, "I don't think I have anything that would be illegal stuff." (*Id.*) Coduti also asked Anderson whether "there is anything in your house that we need to know about as far as if there any computers or things in your house now other than the one I took from you earlier?" (*Id.*). Again, Anderson indicated he did not, stating "I have a couple of computers that are dead computers,

-6-

I don't think, like I said, the one I had when I was heavy in trading I don't still have."  (*Id.* at 30).

Towards the end of the interview of Anderson, Detective Garber reviewed a Consent to Search Form for Anderson's residence, which informed him that he could consult with an attorney prior to agreeing to a consent to search.  (Gov. Ex. 3B at 31:20).  The form indicated that it was being signed without any attempts at coercion. (Gov. Ex. 3B at 31:20).  In response to being asked to sign the consent form, Anderson stated, "I don't feel like I've been coerced."  (Gov. Ex. 3B at 35.09).  Anderson then indicated that he wished to have a lawyer. (Gov. Ex. 3B at 35:09).

During the course of the interview, Anderson indicated that he had been heavily involved in pornographic trading in the past. (Gov. Ex. 3A at 14).  And, that he often (at least in the past) downloaded large files of pornographic material without viewing the contents of those files.  ( *See* Gov. Ex. 3B at 29-31 and Ex. 3A at 14-15). Accordingly, Anderson acknowledged that he could have unknowingly possessed child pornography. (*Id.*)

CONCLUSIONS OF LAW

Motion to Suppress Statements

Anderson's motion seeks to suppress "any and all statements made by the defendant subsequent to contact with government agents." (Motion to Suppress Statements at 1).  The motion itself is devoid of any significant detail, merely stating that "Mr. Anderson did not voluntarily waive his right to silence and right to confer with

counsel." (*Id.*)

At the time Anderson identified himself to Coduti as the owner of the computer, Anderson was not subject to a custodial interrogation. Prior to advising an individual of their rights, "law enforcement officers may ask preliminary questions as to identity, but they may not conduct a custodial interrogation." *United States v. Guiterrez*, 92 F.3d 468, 471 (7th Cir. 1996). Accordingly, Anderson's acknowledgment to Coduti that the computer belonged to him will not be suppressed.

Any other statements that Anderson seeks to suppress (including his written admission to possessing "art" photos of naked adolescents or teens, see Gov.'s Ex. 2), were made after Anderson had been advised of and waived his rights. Anderson, however, contends that his waiver was invalid. More specifically, he claims that the waiver was the product of intimidation, coercion, or deception.

A *Miranda* waiver is valid only if (1) "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) "the waiver [was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Although the police may trick or deceive, if a confession is "procured by threats or promises" it is not admissible. *See United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001).

In support of his claim that he was coerced into waiving his rights, Anderson alleges that Coduti threatened him with prosecution

-8-

for lying (citing Gov. Ex. 3B at 17:08).  Specifically, Coduti stated "any time in your entire statement, the one you gave to me verbally as well as the one that you gave me written, every time I find something that's inaccurate based on my forensic scientists coming back to me, that's an additional charge."  (Gov. Ex. 3B at 17:38). Coduti also stated that "if you put in there that you have the Hamilton Collection, that you believe is called the Hamilton Collection, that you know photos like that, photos that are likely naked children but artistic not necessarily grotesque or them being hurt in any way .... please add that to this because then if I come across that then I'm not having to ... you understand what I'm saying Robert ... I need you to see what you have so I don't have to charge you with those additional charges."  (Citing Gov. Ex. 3B at 20:36). It was after this statement was made that Anderson admitted that he "believe[s] there are ... 'art' photos of naked adolescents or teens" on the computer seized from Chaos.  (Gov. Ex. 3B at 22).  Based on this sequence of events, Anderson concludes that Coduti's threats overbore his will and caused him to make the written statement.

Threats of prosecution can be coercive.   *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003).  However, the evidence as a whole in this case does not support a finding that Anderson's will was overborne.  Anderson was not restrained or told that he was under arrest at any time prior to the statements being made.  He was read his *Miranda* rights even though the interrogation may not be considered custodial, and it may not have been required that Anderson be advised of his rights.  Towards the end of the interview of Anderson,

Detective Garber reviewed a Consent to Search Form for Anderson's residence, which informed him that he could consult with an attorney prior to agreeing to a consent to search. (Gov. Ex. 3B at 31:20). The form indicated that it was being signed without any attempts at coercion. (Gov. Ex. 3B at 31:20). In response to being asked to sign the consent form, Anderson stated, "I don't feel like I've been coerced." (Gov. Ex. 3B at 35:09). Anderson then indicated that he wished to have a lawyer. (Gov. Ex. 3B at 35:09). These circumstances as a whole do not support a finding that Anderson's will was overborne. Therefore, Anderson's claim that his waiver was invalid must fail.

Motion to Suppress Evidence Seized from Computer

In his initial motion to suppress evidence, Anderson makes several arguments regarding why evidence seized from his computer should be suppressed. Each is considered in turn.

Are the Chaos Computer Workers Government Agents?

Anderson claims that the Chaos computer store employees were acting as instruments or agents of the government. This claim was initially supported by no factual assertions whatsoever. And, the hearing on this matter did not bear out Anderson's theory. There is nothing indicating that either Chaos Computer store employee conducted a search to assist law enforcement efforts. Anderson appears to concede this, as his post-hearing briefs make no mention of this theory. Accordingly, this argument is rejected.

Did the Lake County Officer Exceed the Scope of the Prior Private

<u>Search?</u>

Anderson also argues that the Lake Station police searched his computer without obtaining a warrant, and that this search violated the Fourth Amendment because it was a significant expansion of the search that had been conducted previously by the Chaos Computer store employees. When a private search has occurred, and the government subsequently searches, whether the Fourth Amendment is violated depends on the degree to which the government's search exceeds the scope of the private search. *See Walter v. United States*, 447 U.S. 649, 657 (1980).

In *Walter*, a private party found some films that appears to be contraband, but did not view them. An FBI agent viewed them without a warrant. The Supreme Court found that this exceeded the scope of the private search to such an extent that it was a separate search. *Id.*

In contrast, in *Jacobsen*, FedEx discovered a suspicious looking white powder hidden deep within a damaged box, and put the box back together. 466 U.S. 109 (1984). The government arrived, removed the container with the powder (just as FedEx had) but then went one step further. They tested the powder. Although the government did exceed the scope of the private search, under the circumstances, the Court found that there was no constitutional violation. *Id.* at 118. The Court, in so holding, noted that the "Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id.* at 117.

Even after the hearing on Anderson's motion to suppress, it is

-11-

not entirely clear what transpired at Chaos Computers. Anderson makes much of the fact that the file was not technically "opened" when viewed in its thumbnail format, claiming that the search was unlawfully expanded by the "opening" of these files. But, even in their thumbnail form, it was clear that the pictures were identifiable as contraband items. (Transcript of Suppression Hearing V: 1 at 93). The mere act of enlarging an image that was already visible is not an unlawful expansion of the search. Accordingly, Anderson's argument must fail.

Even if Richardson's actions did constitute a significant expansion of the private search that occurred, Anderson's motion to suppress would fail because Heard and Friedlund had actual and apparent authority to consent to the search. "[W]here a defendant allows a third party to exercise actual or apparent authority over his property, he is considered to have assumed the risk that the third party might permit access to others, including government agents. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). Additionally, even if actual authority is lacking, there is apparent authority if a reasonable person, with the same knowledge of the situation as that possessed by the government agent to whom consent was given, would reasonably believe that the third party had authority over the area to be searched. *Basinski*, 226 F.3d at 834. Both Heard and Friedlund were authorized to access Anderson's computer, and therefore entitled to allow Robinson access to the computer. (*Id.* at V. 1: 13, 32). Additionally, it would appear to others that Heard and Friedlund, who were responsible for repairing Anderson's computer, had

-12-

apparent authority to view the contents of the computer. Officer Richardson was well founded in believing that Chaos Computers possessed the authority to consent to a search of the part of the computer to which they were granted access by Anderson.

Government also argues that the images fell within the plain view exception. The plain view doctrine applies "if the officer has a legal right to be in the place from where he sees the object subject to seizure and a 'lawful right to access to the object itself,' and if the object's incriminating nature is 'immediately apparent.'" *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996)(quoting *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir. 1991)). The incriminating nature is immediately apparent if, under the circumstances, the officer has "probable cause to believe that the item is linked to criminal activity." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997). There is an interesting debate on whether the plain view doctrine should apply in a situation such as this. *See United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999); *see also* Orin Kerr, "Searches and Seizures in a Digital World," 119 HVLR 531, 577-78 (2005)). Because it is unclear exactly what happened when Richardson arrived at Chaos Computers, and therefore not entirely clear what was in plain view and what was not, this issue is better left for another day.

<u>Did the Government Lack a Proper Warrant to Seize the Computer?</u>

Anderson also argues that his computer was seized prior to obtaining a warrant (more specifically, that the Chaos Computers employees worked in concert with the government to deprive him of his

possessory interest in the computer). In briefs submitted post-evidentiary hearing, it appears Anderson abandoned his initial argument (an argument which this Court would have rejected), arguing instead that no warrant was ever obtained for the later search of the computer hard drive seized at the Chaos Computers store. More specifically, Anderson argues that the warrant relied upon to authorize the search of the computer only authorized a search of his residence. (*See* Gov. Ex. A). While Exhibit A is a warrant to search Anderson's residence, a separate warrant to search the computer exists. (*See* 2:06MJ148). Anderson has not challenged the validity of that warrant. Accordingly, this argument must fail.

Did the Government Fail to Properly Preserve the Computer?

Although Anderson's initial motion to suppress also claims that the Government failed to properly preserve the computer and hard drive, Anderson did not cite to any facts or law to support this claim, either initially or in supplemental briefs filed after the hearing. This Court will not do the parties research for them. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is not the responsibility of this court to make arguments for the parties."). Because Anderson utterly failed to develop this argument, it is rejected.

Motion to Suppress Evidence Seized from Home and Request for *Franks* Hearing

In his memorandum of law submitted after the hearing in this

-14-

matter, Anderson asks for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The proper method for raising new issues such as this is a separate motion. Nonetheless, this issue is raised on the eve of trial, and this Court believes that the interest of justice require that it be considered.

*Franks v. Delaware* provides that the defendant must "make[] a substantial preliminary showing" that the false statements were made knowingly or in "reckless disregard for the truth." *Franks*, 438 U.S. at 155-56. Then, the defendant must show that the allegedly false statements were necessary to the probable cause determination. *Id.* If the defendant sustains this burden, he is entitled to a *Franks* hearing to establish that his allegations are true. *Id.* At that hearing, he must show, by a preponderance of the evidence, that the affiant made false statements knowingly or in reckless disregard for the truth. *Id.*; *see also United States v. Radtke*, 799 F.2d 298, 309 (7th Cir. 1986). If successful, the Court will redact the false statement from the record and determine if probable cause exists based on the corrected affidavit. *Franks*, 438 U.S. at 156, 171; *Radtke*, 799 F.2d at 309. If, after this is done, the Court finds there is no probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

Anderson argues that Coduti recklessly disregarded the truth in his warrant affidavit when he stated that Anderson "admitted his residence might contain additional images of child pornography on old computers and storage devices." The record is not nearly as clear as

-15-

this statement by Coduti would lead one to believe.  In fact, although the interview of Anderson was videotaped and was introduced into evidence during the motion to suppress hearing, in their response, the Government cannot point to any statement made by Anderson that could have lead Coduti to conclude that Anderson "admitted" his residence might contain additional child pornography.  Instead, the Government relies upon a variety of statmeents, which taken together might have created probable cause to search Anderson's home, but which do not constitute an admission that child pornography might be in the home.  In contrast, Anderson points to at least two statements in which Anderson indicates he does not believe his home contains child pornography.   (*See* Gov. Ex. 3B at 29-30).  Additionally, a review of the affidavit reveals that there are no other allegations contained in the affidavit itself which would link anything remaining in Anderson's residence to the alleged unlawful activity.  Accordingly, this Court concludes that Anderson is entitled to a *Franks* hearing.

### Overbredth of Warrants to Search Home and Computer

Anderson also argues in his initial motion to suppress that the warrants issued to search his computer and home were overbroad.  This argument was not developed at all until Anderson's reply brief.  In his reply, Anderson claims that the warrants to search Anderson's computer and home do not satisfy the particularity requirements, and ask the Court to evaluate the following factors: "(1) whether probable cause exists to seize all items of a particular type described in the warrant, ...; (2)whether the warrant sets out objective standards by

which executing officers can differentiate items subject to seizure from those which are not, ...; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.'" (citing *In re Search of 3817 W. West End, 1 $^{st}$ Floor, Chicago, Illinois*, 321 F.Supp.2d 953, 960 (N.D. Ill. 2004)).  Although Anderson states that "the warrants issued in Anderson's case are unreasonable when viewed in light of the factors stated above", Anderson offered this Court nothing more by way of argument.  Again, this Court will not make the parties arguments for them.  *Vaughn,* 167 F.3d 347, 354 (7th Cir. 1999).

   Similarly, Anderson suggests that a less intrusive on-site search would have been appropriate, as opposed to the off-site search that was conducted of Anderson's computer hard drive and computer storage devices (including hundreds of 3.5 inch floppy disks, CDs, zip drives, and ... digital backup tape drives, as well as close to two hundred VHS tapes).  According to Anderson, an adequate showing was not made to the magistrate to justify the off-site search.  But, Anderson fails to specifically tell this Court what showing he believes should have been made.  It is clear from the record that the kind of forensic exam that the Government ultimately conducted on Anderson's computer and computer storage devices could not have practically been carried out during an on-site search.  Accordingly, Anderson has not established that the warrants issued to seize Anderson's computer hard drive and search his home were overbroad.

-17-

CONCLUSION

> For the reasons set forth below, Anderson's Motion to Suppress Statements is **DENIED,** and the Motion to Suppress Evidence Seized Illegally is **DENIED** to the extent it seeks to suppress evidence contained on the computer seized from Chaos Computers, and **REMAINS UNDER ADVISEMENT** to the extent it seeks to exclude evidence seized from Anderson's Home. Anderson's request for a hearing pursuant to *Franks v. Delaware* is **GRANTED,** and the hearing is scheduled for Wednesday, April 18, 2007 at 9:00 a.m.

**DATED: April 16, 2007**           **/s/RUDY LOZANO, Judge**
                                    **United States District Court**